No. 24-1200

Criminal

United States of America,

Appellee,

v.

Wayne D. Lozier, Jr.,

Appellant.

Appeal from the United States District Court
Eastern District of Missouri
District Court No. 4:21-cr-00365-RLW-1

The Honorable Ronnie L. White
United States District Court Judge, Presiding

## APPELLANT'S REPLY BRIEF

Nanci H. McCarthy
Federal Public Defender

Tyler K. Morgan
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
314-241-1255
Attorney for Appellant

# Table of Contents

**Page:**

Table of Authorities ...................................................................................iii

Argument ........................................................................................................ 1

I.    **The District Court imposed a conclusive presumption.**................................ 1

    A.    **Review should be de novo, but abuse of discretion review will lead to the same result.**............................................................. 2

    B.    **Precedent and the record foreclose the government's principal arguments.**.......................................................................... 3

        1.    **The government offers a narrow understanding of conclusive presumptions that conflicts with binding law.**...... 3

        2.    **The government suggests a meaning of "unlawfully" that is inconsistent with precedent and the definition the jury received from the District Court.**.................................... 7

        3.    **The government improperly relies on the looser standard applicable to inferences, not presumptions.**........................... 10

    C.    **The disputed instruction fares no better when read in tandem with the rest of the instructions.**..................................... 11

    D.    **Disfavored interrogatories reinforced the instruction's unconstitutional effect.**................................................... 14

    E.    **The conspiracy count was fatally infected, and the government does not argue otherwise.**......................................... 16

    F.    **The government cannot prove harmlessness.**.................................... 16

Conclusion.................................................................................................... 21

Appellate Case: 24-1200    Page: 2    Date Filed: 07/22/2024    Entry ID: 5415998

Service Certificate ................................................................................................... 22

Compliance Certificate ........................................................................................... 22

Appellate Case: 24-1200     Page: 3     Date Filed: 07/22/2024 Entry ID: 5415998

# Table of Authorities

**Cases:**                                                    **Page:**

*Avon State Bank v. BancInsure, Inc.*, 787 F.3d 952 (8th Cir. 2015) ...................................... 3

*Boyde v. California*, 494 U.S. 370 (1990) ........................................................ 14

*Carella v. California*, 491 U.S. 263 (1989) (per curiam) .......................................... 3, 5-6, 10

*Chatwin v. U.S.*, 326 U.S. 455 (1946) ........................................................... 8

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147 (8th Cir.

2013) ........................................................................................... 3

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ..................................................... 19

*Francis v. Franklin*, 471 U.S. 307 (1985) ................................................*passim*

*In re Winship*, 397 U.S. 358 (1970) ............................................................... 7

*Morissette v. U.S.*, 342 U.S. 246 (1952) .......................................................... 10

*Neder v. U.S.*, 527 U.S. 1 (1999) ................................................................ 17

*Rose v. Clark*, 478 U.S. 570 (1986) ............................................................. 9, 19

*Sandstrom v. Montana*, 442 U.S. 510 (1979) ................................................... 1, 4, 7

*Sullivan v. Louisiana*, 508 U.S. 275 (1993) ...................................................... 19-20

*Yates v. Evatt*, 500 U.S. 391 (1991) ............................................................. 19-20

*U.S. v. Bordeaux*, 400 F.3d 548 (8th Cir. 2005) .................................................... 20

*U.S. v. Cerone*, 830 F.2d 938 (8th Cir. 1987) ................................................... 10, 11

*U.S. v. Espinosa*, 585 F.3d 418 (8th Cir. 2009) ................................................... 12

*U.S. v. Hoog*, 504 F.2d 45 (8th Cir. 1974) ......................................................... 8

Appellate Case: 24-1200     Page: 4     Date Filed: 07/22/2024 Entry ID: 5415998

*U.S. v. Mariano*, 729 F.3d 874 (8th Cir. 2013)...................................................8-9

*U.S. v. Parker*, 32 F.3d 395 (8th Cir. 1994) .................................................... 10

*U.S. v. Shavers*, 955 F.3d 685 (8th Cir. 2020) ................................................. 3

*U.S. v. Silkman*, 156 F.3d 833 (8th Cir. 1998) ................................................ 4

*U.S. v. Smith*, 961 F.3d 1000 (8th Cir. 2020) ................................................. 16

*U.S. v. Stegmeier*, 701 F.3d 574 (8th Cir. 2012) ............................................ 16

*U.S. v. Warren*, 25 F.3d 890 (9th Cir. 1994) .................................................. 2

**Federal Rules:**

8th Cir. R. 28A ........................................................................................... 22

Fed. R. App. P. 32 ..................................................................................... 22

**Federal Statutes:**

18 U.S.C. § 1201 ..................................................................................... 1, 8

Appellate Case: 24-1200   Page: 5   Date Filed: 07/22/2024 Entry ID: 5415998

## Argument

## I. The District Court imposed a conclusive presumption.

Mr. Lozier's trial came down to whether he acted "unlawfully" as the kidnapping statute, § 1201, uses that term.[1] In its response, the government agrees that "the primary issue in the case" was "whether Lozier's conduct was unlawful."[2]

This appeal turns on how the District Court handled that dispositive element.

Two instructions matter here. Instruction 15 defined "unlawfully" as "contrary to the law and neither justifiable nor excusable."[3] Instruction 16 required jurors to reveal their answer to two questions about Mr. Lozier's conduct.[4] It then directed that if they unanimously replied "Yes" to either inquiry, then "the Defendant has acted unlawfully."[5]

By dictating that the government met its burden on the "unlawfully" element if the jury found certain predicate facts, the District Court imposed a conclusive presumption. *See Sandstrom v. Montana*, 442 U.S. 510 (1979). The Supreme Court has held—repeatedly, and for decades on end—that such devices are unconstitutional.[6]

---

[1] *See, e.g.*, App. Br., at 42 ("In a trial where many elements were beyond dispute, the 'unlawfully' element effectively *was* the trial.") (emphasis in original).

[2] Gov. Br., at 32.

[3] Add. 9; R. Doc. 199, at 23.

[4] Add. 13; R. Doc. 199, at 25.

[5] *Id.*

[6] *See* App. Br., at 35-36 (collecting cases).

Appellate Case: 24-1200    Page: 6    Date Filed: 07/22/2024 Entry ID: 5415998

The government concedes that unlawfulness is a kidnapping element that it had to prove to the jury beyond a reasonable doubt.[7] Given what Instruction 16 said about that element, there is a straight and short line from this concession to the conclusion that the District Court erred.

The government resists that conclusion with rejoinders that are wrong on the law, the facts, or both. And its attempt to paint the error as harmless falls well short of its burden.

For the reasons in Mr. Lozier's opening brief and below, the Court should vacate his convictions and remand for a new trial.

### A. Review should be de novo, but abuse of discretion review will lead to the same result.

The government urges abuse of discretion review.[8] The only Circuit to squarely address the right standard for this issue has settled on de novo review. *See U.S. v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994). This Court should join in that conclusion.

The government provides no sound reason to do otherwise. It claims that the challenged instruction "had no effect on [Mr. Lozier's] defense" and did not "impose a conclusive presumption on the jury in violation of Lozier's Fifth Amendment rights."[9] These statements are just legal conclusions about the instruction's effect on

---

[7] *See, e.g.*, Gov. Br., at 29 (agreeing that "an element of the kidnapping offense was whether it was unlawful for Lozier to seize, detain, and carry away Carman").

[8] *Id.* at 25-26.

[9] Gov. Br., at 26.

2

Mr. Lozier's constitutional rights. When asking if an instruction violated such rights, this Court has often (albeit not always) reviewed de novo. *See, e.g.*, *U.S. v. Shavers*, 955 F.3d 685, 693-94 (8th Cir. 2020). It should continue to do so here.

If the Court nevertheless reviews for an abuse of discretion, it will end in the same spot. When it comes to "purely legal question[s]" like the one raised here, this Court has noted that "[l]ittle turns . . . on whether we label the review . . . abuse of discretion or de novo, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." *Avon State Bank v. BancInsure, Inc.*, 787 F.3d 952, 959 n.3 (8th Cir. 2015) (quotation marks omitted, first two alterations in original). Put another way, "[a]n error of law is necessarily an abuse of discretion." *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1152 (8th Cir. 2013).

So under abuse of discretion review just as under de novo review, if Instruction 16 imposed a conclusive presumption, the District Court erred.

**B. Precedent and the record foreclose the government's principal arguments.**

**1. The government offers a narrow understanding of conclusive presumptions that conflicts with binding law.**

"A mandatory presumption instructs the jury that it must infer the presumed fact if the [government] proves certain predicate facts." *Francis v. Franklin*, 471 U.S. 307, 314 (1985); *see also Carella v. California*, 491 U.S. 263, 265 (1989) (error occurs when instruction "could have been understood by reasonable jurors to require them to find the presumed fact if the [government] proves certain predicate facts").

3

Here, Instruction 16 told the jury that Mr. Lozier acted "unlawfully" if the government proved predicate facts about his conduct. This was an unconstitutional presumption.[10] *See U.S. v. Silkman*, 156 F.3d 833, 836 (8th Cir. 1998) (explaining that "conclusive presumptions are invalid in criminal cases because they 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime, and would invade the factfinding function which in a criminal case the law assigns solely to the jury'") (*quoting Sandstrom*, 442 U.S. at 523).

In response, the government suggests that not all "predicate facts" are equal. It stresses that the District Court "did not require the jury to presume [an] element based on proof *of any other element of the offense*."[11] It senses a due process problem only when a court imposes a presumption on one element ("most commonly" intent) based on findings about another element.[12] Guided by that understanding, it submits that the District Court did not err because it "did not direct the jury to presume that Lozier acted unlawfully if it found beyond a reasonable doubt that he had seized Carman, or transported her across state lines, or did so to receive an award."

---

[10] *See, e.g.*, App. Br., at 45-46.

[11] Gov. Br., at 29 (emphasis added); *see also id.* at 31 ("Instruction No. 16 did not direct the jury to presume that Lozier's conduct was unlawful based on proof *of another element of the kidnapping offense*.") (emphasis added).

[12] *Id.* at 27.

4

That is not the law. Yes, one way that a presumption can "reliev[e] the Government of its burden to prove [an] element," *id.* at 27, is by bootstrapping that element to another, *see, e.g.*, *Francis*, 471 U.S. 316 ("The portion of the jury charge challenged in this case directs the jury to presume an essential element of the offense—intent to kill—upon proof of other elements of the offense—the act of slaying another."). But the government cites no opinion holding that presumptions *only* relieve the government's burden when tied to another element.

In fact, under Supreme Court precedent, presumptions violate due process when keyed to *any* "predicate facts"—whatever those facts may be.

Take *Carella* for example. There, the Justices grappled with a conviction for "grand theft" of a rental car. *Carella*, 491 U.S. at 264. Two instructions were at issue. One told jurors to presume "intent to commit theft by fraud" if they found a "failure to return rented property within 20 days of demand." *Id.* at 265. The other told them to presume that the defendant "embezzled a car" if that car was "not returned within 5 days of the expiration of the rental agreement." *Id.*

The intent instruction is unconstitutional under the response's theory. It imposed a presumption on one theft element (intent) based on evidence of a separate element (a taking). Since this instruction "required the jury to presume [an] element based on proof of [another] element," the government would call it invalid.[13]

---

[13] Gov. Br., at 29.

5

The other instruction, however, would pass the government's test. It told the jury that certain facts indicative of an unlawful taking were enough to conclusively establish such a taking. *See Carella*, 491 U.S. at 265. Unlike the instruction above, it did not latch one element to another.

The government would find no fault with the latter instruction, but the Supreme Court did. The Justices held that *both* instructions "violated the Fourteenth Amendment." *Id.* at 266. The presumptions "directly foreclosed independent jury consideration of whether the facts proved certain elements of the offenses with which Carella was charged." That, in turn, "relieved the State of its burden of proof articulated in *Winship*, namely, proving by evidence every essential element of Carella's crime beyond a reasonable doubt." *Id.*

Nothing else mattered. It was immaterial that the predicate facts listed in one instruction were, to use the government's phrase, "independent of the other elements of the [] offense."[14] The Justices never even broached such a distinction. *See Carella*, 491 U.S. at 265-66. What was unconstitutional in *Carella* was unconstitutional here, because *Carella* governs over the government's gloss.

It is also worth noting that the government's vision of the law has no limit. Under its test, a court could foreclose "independent jury consideration" of *every* element. A court could ordain that each element of a charged crime presumptively

---

[14] Gov. Br., at 29.

followed from findings about the government's proof, and the resulting verdict would stand so long as no element piggybacked on another. In that scenario, the jury would still find at least some facts but no longer hold the government to its *Winship* burden. *See In re Winship*, 397 U.S. 358, 364 (1970). The Constitution forbids this outcome, which would be akin to a directed verdict for the government. *See, e.g., Sandstrom*, 442 U.S. at 516 n.5 (explaining that "verdicts may not be directed against defendants in criminal cases" and collecting cases).

> ### 2. The government suggests a meaning of "unlawfully" that is inconsistent with precedent and the definition the jury received from the District Court.

The government also says that the District Court "accurately stated the law" on Instruction 16.[15] It does not fully explain why it thinks this observation matters, but the implication seems to be this: the District Court framed Missouri law correctly, and the jury found that Mr. Lozier acted contrary to that law as stated, so the District Court was free to direct that the "unlawfully" element was satisfied.

For this logic to hold together, this element must require the government to prove only that Mr. Lozier "committed either of two acts that violated Missouri law."[16] The government indeed paints Instruction 16 as holding it to that burden.[17]

---

[15] Gov. Br., at 29.

[16] *Id.* at 31.

[17] *See, e.g., id.* at 24-25 ("[B]ecause Instruction No. 16 required the jury to unanimously find that Lozier committed one of two acts that are crimes under Missouri law, it did not lessen the Government's burden to prove he acted unlawfully.")

7

This implied meaning of "unlawfully" is wrong on the law. The Court has disapproved of defining that term to mean only that a person acted "contrary to law." *U.S. v. Hoog*, 504 F.2d 45, 51 (8th Cir. 1974). That disapproval is consistent with § 1201's purpose, *see* App. Br., at 38-40, and the Supreme Court's command to read § 1201 with that purpose "in mind," *Chatwin v. U.S.*, 326 U.S. 455, 464 (1946). The response does not dispute anything that Mr. Lozier has said about *Hoog* or *Chatwin*. But its argument presupposes a "circular," *Hoog*, 504 F.2d at 51, and "loose," *Chatwin*, 326 U.S. at 464, meaning that conflicts with both cases.[18]

The government is also wrong on the facts. Consistent with *Hoog*, *Chatwin*, and § 1201's "background and setting," *Chatwin*, 326 U.S. at 464, the District Court instructed that "unlawfully" meant more than some technical misstep.

Specifically, the District Court instructed that it was not enough for Mr. Lozier's conduct to be "contrary to the law."[19] It also had to be "neither justifiable nor excusable."[20] The government does not complain about that multi-part definition on appeal. Nor could it. *See U.S. v. Mariano*, 729 F.3d 874, 880 (8th Cir.

---

[18] Mr. Lozier initially proposed a definition similar to the one in *Hoog. See* R. Doc. 201, at 7 ("'Unlawfully' means contrary to the law. So, to do an act unlawfully means to do *willfully* something which is contrary to the law.") (emphasis added). To avoid the problem that *Hoog* identified, he added "willfully" and suggested complementing the instruction with another that defined "willfully" in a manner consistent with § 1201(a)'s legislative history. *Id.* at 7, 9.

[19] Add. 9; R. Doc. 199, at 23.

[20] *Id.*

2013) (party may not challenge instruction that it requested). "Unlawfully" meant what the District Court said it meant, nothing less.

Despite its current position, the government once understood that it had to prove more than an act contrary to Missouri law to meet its burden. After all, it suggested supplementing the District Court's initial definition ("contrary to law") with the concepts of justification and excuse.[21] If this element only required proof that Mr. Lozier "committed either of two acts that violated Missouri law," then the government's proffered additions would have been superfluous. It beggars belief that the government proposed (and the District Court adopted) such empty language.

The Court need not indulge that belief, because the government got it right the first time—"unlawfully" requires something more than proof of a state law offense. The District Court therefore could not instruct that this element was conclusively proven merely by evidence of such an offense.

There is another fundamental issue. The government is smuggling in a disguised harmlessness argument as its answer to the merits. Distilled down, its theory is that the "predicate facts" on Instruction 16 (violations of state law) "conclusively establish[ed]" the disputed element (unlawfulness). *Rose v. Clark*, 478 U.S. 570, 580 (1986). If true, that proposition could open the door to a potential harmless error finding. *Id.*

---

[21] *See* Trial Tr., Vol. III, at 7.

9

But the government advances this argument (at least implicitly) to rebut

Mr. Lozier's claim of error. In that role, it necessarily fails. A court cannot relieve the

government of its burden on an element, even if it is thoroughly convinced by the

evidence. *See, e.g.*, *Morissette v. U.S.*, 342 U.S. 246, 274-75 (1952); *see also Carella*, 491

U.S. at 265 (lower court decision that "validated the presumptions on the ground that

Carella never offered testimony concerning the nonexistence of the presumed facts"

was "plainly at odds with prior decisions of this Court") (cleaned up).

Perhaps the District Court was satisfied that the evidence of state law breaches

took the "unlawfully" element off the table. Yet it was not free to demand that the

jury reach the same conclusion. The government cannot defend a conclusive

presumption on these grounds.

> **3.  The government improperly relies on the looser standard applicable to inferences, not presumptions.**

The response also frames the District Court's directive about Mr. Lozier's

conduct as "'one that reason and common sense justif[ied]' if the jury determined that

the Government proved either fact."[22] The government proposes the wrong standard.

The "reason and common sense" standard applies only to *permissive inferences*, not

*conclusive presumptions. See, e.g.*, *Francis*, 471 U.S. at 314-15 (distinguishing inferences and

presumptions); *see also U.S. v. Parker*, 32 F.3d 395, 402 (8th Cir. 1994) (same).

---

[22] Gov. Br., at 31 (*quoting See U.S. v. Cerone*, 830 F.2d 938 (8th Cir. 1987)).

Presumptions "violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense," full stop. *Francis*, 471 U.S. at 314. They cannot be bailed out by appeals to reason or common sense. *Id.* That distinction is evident in the very case the government cites. *See Cerone*, 830 F.3d at 946 (highlighting standard applicable to inferences and noting that such inferences "do[] not necessarily violate due process" in same manner as presumptions).

The distinction matters here. Instruction 16 imposed a presumption. Its language did not "suggest[] to the jury a possible conclusion to be drawn if the [government] prove[d] predicate facts," the hallmark of an inference. *Francis*, 471 U.S. at 314. Instead, it "*require[d]* the jury to draw that conclusion," and that made it a conclusive presumption. *Id.* (emphasis added). The government cannot excuse this instruction by blurring the line between the law of presumptions and the more forgiving standard that precedent affords only to inferences.

## C.  The disputed instruction fares no better when read in tandem with the rest of the instructions.

Alternatively, the government insists that Instruction 16 imposed no presumption because "the jury was told that if it found Lozier's seizure, detention, and carrying away of Carman was justifiable or excusable, it could not conclude that he acted unlawfully."[23] So Mr. Lozier "had every opportunity to assert his defense."[24]

---

[23] Gov. Br., at 32.

[24] *Id.* at 33.

As support, the government lays Instruction 16 side-by-side with Instruction 15.[25] As noted, Instruction 15 said that "unlawfully" means "contrary to law and neither justifiable nor excusable."[26] The government posits that this charge told the jury that, notwithstanding Instruction 16's directive, it had to consider whether Mr. Lozier acted with justification or excuse in holding the government to its burden.[27]

It is true that the Court must review instructions as a whole, so Instruction 15 cannot be ignored. However, an instruction "that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Francis*, 471 U.S. at 322. Instruction 15 did not "explain" Instruction 16. Instead, it provided a contradictory order. Under *Francis*, that does not excuse a presumption.

There is good reason for this rule. This Court has "repeatedly held that jurors are presumed to follow the court's instructions." *U.S. v. Espinosa*, 585 F.3d 418, 429 (8th Cir. 2009). This jury could not do so. Adherence to Instruction 15 required the jury to assess justification and excuse. But once the jury answered "yes" to the interrogatories, adherence to Instruction 16 required it to skip that assessment.

Something had to give, but this Court has no means of discovering whether Instruction 15 or 16 won out. *See Francis*, 471 U.S. at 322 ("A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in

---

[25] *See, e.g., id.* at 31-32.

[26] Add. 9; R. Doc. 199, at 23.

[27] *See, e.g.,* Gov. Br., at 32.

Appellate Case: 24-1200     Page: 17     Date Filed: 07/22/2024 Entry ID: 5415998

reaching their verdict."). The government cannot elide the problems with Instruction 16 by gesturing to Instruction 15.[28]

It is also worth mentioning that the government is now at odds with itself. Before this Court, it avers that the jury was free to consider justification or excuse, regardless of how it answered Instruction 16's questions. Here is what it told that same jury in its closing argument:

> And if your answer is yes to either one of those interrogatories in Instruction No. 16, then the government has proven beyond a reasonable doubt that the defendant acted unlawfully.[29]

It later returned to this idea, saying that "either of those facts [on the instruction] make what the defendant did unlawful."[30] So despite the government's after-the-fact

---

[28] In discussing the interplay between Instructions 15 and 16, the government asserts that "[i]t would have been improper for the district court to repeat the "justifiable" or "excusable" language in Instruction No. 16" because "[t]here are no provisions in the Missouri Statutes . . . that extend those defenses to surety recovery agents operating within the state." Gov. Br., at 32. This observation (if true) is irrelevant. No one sought to have the jury decide whether Mr. Lozier made out a justification or excuse defense to the alleged *state offenses*, although both parties did ask the District Court to tell jurors about bounty hunters' rights under state law. *See* R. Doc. 201, at 3.

Instead, the District Court told the jury that Mr. Lozier's taking could amount to a *federal kidnapping* only if it was neither justifiable nor excusable. The problem with Instruction 16 is not that it failed to repeat the words "justifiable" or "excusable" in reference to *state offenses*. The problem is that it foreclosed the jury from asking, while passing on the *federal offenses*, whether the government sufficiently proved the "unlawfully" element as the District Court defined it.

[29] Trial Tr., Vol. III, at 33-34.

[30] *Id.* at 36.

Appellate Case: 24-1200     Page: 18     Date Filed: 07/22/2024 Entry ID: 5415998

rationalization, it repeatedly told the jury that Instruction 16's directive was conclusive on its burden.

This point is not just a gotcha. To resolve this appeal, the Court must decide "whether there is a *reasonable likelihood* that the jury [] applied the challenged instruction in a way" that violated due process. *Boyde v. California*, 494 U.S. 370, 380 (1990) (emphasis added). That likelihood arose from Instruction 16's clear, mandatory language. *Cf. Francis*, 471 U.S. at 316 (instruction "cast in the language of command" "carr[ied] precisely the message of the language condemned in *Sandstrom*"). And the government's unequivocal statements to the jury about the instruction increased the chance that jurors treated it as what it was: a presumption.

### D. Disfavored interrogatories reinforced the instruction's unconstitutional effect.

The government spends some time defending the District Court's unusual step of creating interrogatories.[31] But Mr. Lozier did not ask this Court to vacate his convictions based on the decision to write those questions. Instead, he discussed the questions as further evidence of Instruction 16's likely effect, as that is the core issue under *Boyde*.[32] *See Boyde*, 494 U.S. at 380. In endorsing the interrogatories on their merits, the government leaves Mr. Lozier's actual point mostly unanswered.

---

[31] *See* Gov. Br., at 33-35.

[32] *See, e.g.*, App. Br., at 47 ("*In case there is any doubt about this instruction's effect*, Mr. Lozier pauses to explain a related defect that fed into the presumption.") (emphasis added).

14

In any event, the response's defense fails on its own terms. The government believes that the interrogatories were "necessary" because "[b]y requiring the jury to unanimously determine which act, if any, Lozier committed," they clarified "which of the two unlawful acts the jury unanimously found Lozier to have committed."[33]

That makes sense in a vacuum, but not on this record. The District Court drafted interrogatories *that lacked a unanimity requirement*.[34] It then declined to add such a requirement in the face of an objection, before finally relenting after a recess.[35] These questions could not have been "necessary" to ensure unanimity when their initial design failed to serve that function. The government offers a post hoc excuse for the interrogatories, not an explanation of their essential purpose.

The government also emphasizes that the interrogatories accurately conveyed to the jury "the Government's theory of why Lozier acted unlawfully."[36] Yet as Mr. Lozier has explained, that is a longstanding *criticism* of such interrogatories—they channel decision-making in the prosecution's direction.[37] That these "disfavored" questions aligned perfectly with the government's theory of the case is one more

---

[33] Gov. Br., at 34.

[34] *See* Add. 11 - Add. 12 (first two drafts of Instruction 16). Mr. Lozier filed a motion to supplement the record with these drafts, and that motion is being taken with the case. The government did not respond to Mr. Lozier's motion and has not challenged the authenticity of the drafts.

[35] *See* Trial Tr., Vol. III, at 14, 15.

[36] Gov. Br., at 34.

[37] *See* App. Br., at 47-48.

Appellate Case: 24-1200    Page: 20    Date Filed: 07/22/2024 Entry ID: 5415998

cautionary tale against their use, not a mark in their favor. *U.S. v. Stegmeier*, 701 F.3d 574, 581 (8th Cir. 2012).

**E.     The conspiracy count was fatally infected, and the government does not argue otherwise.**

Mr. Lozier has spelled out why the Court should vacate his conspiracy conviction.[38] The government acknowledges this argument[39] but fails to address it. It offers no basis for disentangling the charges or limiting the remedy.

For the unanswered reasons in Mr. Lozier's opening brief, if the Court vacates the kidnapping conviction, it should vacate the conspiracy conviction along with it.

**F.     The government cannot prove harmlessness.**

The response ultimately defaults to harmless error. It critiques Mr. Lozier for not affirmatively disproving harmlessness,[40] without acknowledging that it bears the burden of proof. *U.S. v. Smith*, 961 F.3d 1000, 1004 (8th Cir. 2020) ("The government has the burden to prove harmless error."). It does not meet that burden.

The government notes that Mr. Lozier "did not dispute at trial . . . that he committed the acts outlined in Instruction No. 16."[41] That is true, but it is only half an

---

[38] App. Br., at 49-51.

[39] *See* Gov. Br., at 24.

[40] *Id.* at 36. ("But instead of pointing to evidence at trial that showed his conduct was justifiable or excusable, Lozier suggests that he will 'address' the issue in his reply brief.") (*quoting* App. Br., at 52).

[41] Gov. Br., at 36.

16

answer. To repeat once more, the "unlawfully" element had two parts. One—"contrary to the law"—was not seriously contested. Contesting the other—"neither justifiable nor excusable"—was the entire point of the trial. With half the definition in dispute, it does not matter that the other half was not.

Even if Mr. Lozier threw in the towel on whether he acted "contrary to the law," he could argue that the government did not meet its burden on the other part of the definition. An error that kept him from doing so cannot be harmless so long as he raised some evidence backing up his pitch. *Cf. Neder v. U.S.*, 527 U.S. 1, 19 (1999) (when "the defendant contested [an] omitted element and raised evidence sufficient to support a contrary finding," an instructional error is not harmless).

And Mr. Lozier produced that evidence. His opening brief outlined his case for justifying or excusing a seizure that was technically contrary to Missouri law.[42] To recap, the evidence showed that Ms. Carman assaulted her husband while violating a protective order.[43] She bonded out of jail on those charges and then knowingly fled from prosecution across multiple states for several months.[44] She offered flimsy and

---

[42] *See, e.g.*, App. Br., at 44.

[43] Trial Tr., Vol. I, at 44 (Ms. Carman admitting to these offenses).

[44] Trial Tr., Vol. II, at 14, 17, 24-25 (Ms. Carman acknowledging her bond obligations); *id.* at 27 (Ms. Carman testifying about her flight to Florida); *id.* at 31 (Ms. Carman acknowledging that warrant issued for her while in Florida); Trial Tr., Vol. I, at 49 (Ms. Carman testifying about her flight to Missouri despite warrant).

Appellate Case: 24-1200    Page: 22    Date Filed: 07/22/2024   Entry ID: 5415998

unsubstantiated claims that her prosecutor supported (or at least tolerated) her fugitive status.[45]

Whether or not Ms. Carman's tale of an indefinite pass was true, her bondsman had the right to contract with Mr. Lozier to apprehend her—a point that she was aware of[46] and which the response does not challenge.

All of this is in the record.[47] The government would presumably draw different inferences from that record, but its brief does not lay out a case for why the jury assuredly would have done the same. The closest this section comes to tackling Mr. Lozier's case for justification or excuse is a conclusory statement that "any rational jury would have reached the same verdict regardless of any instructional error."[48] Why? The Court is left to guess.

The response also asserts that Mr. Lozier did not center a justification or excuse argument in his closing.[49] The government's focus is misplaced. Once the defense lost its objection that Instruction 16 was an unconstitutional device, it had to deal with it as a practical reality. It was aware that Instruction 16 was coming and

---

[45] *See, e.g.*, *id.* at 47; Trial Tr., Vol. II, at 17.

[46] *See* n.44, *supra*.

[47] On top of the record evidence, Mr. Lozier and his amici have provided additional color about the rights of bondsmen and bounty hunters. *See, e.g.*, App. Br., at 42-44; Amici Br., at 6-11. The government has declined to address any of it.

[48] Gov. Br., at 37.

[49] *Id.*

18

would undermine entreaties to justification and excuse. It would be reasonable to pivot in the shadow of that looming instruction.[50]

More to the point, nothing about a choice to re-frame a closing argument could wipe away the evidence in the record. And this Court must review that "whole record" to resolve the government's harmlessness claim. *Rose*, 478 U.S. at 576 (*quoting Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)). The response invites the Court to ignore that rule with its myopic focus on closing over the full record.

At bottom, the government seems to rely on an implicit assumption that runs through its brief. It proceeds as if Instruction 15 imported silent limitations on what "justifiable" and "excusable" could mean. It further assumes that those limitations, whatever they might have been, would have ruled out Mr. Lozier's theory in a way that the jury could not ignore.

The record shows otherwise. Instruction 15 placed no restrictions and offered no guidance on those terms. If anyone harbored an unspoken intent to limit or shape the meaning of "justifiable" and "excusable," they forgot to tell the jury about it.

That all but forecloses the government's implicit harmlessness argument. Harmless error analysis focuses on "the basis on which 'the jury *actually rested* its verdict.'" *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (*quoting Yates v. Evatt*, 500 U.S.

---

[50] That said, Mr. Lozier did not totally abandon his justification or excuse arguments. *See, e.g.*, Trial Tr., Vol. III, at 49, 54 (highlighting several facts relevant to justification and excuse).

Appellate Case: 24-1200    Page: 24    Date Filed: 07/22/2024 Entry ID: 5415998

391, 404 (1991)) (emphasis in original); *see also U.S. v. Bordeaux*, 400 F.3d 548, 561-62 (8th Cir. 2005) (applying this rule from *Sullivan*). It defies that principle to suppose that this jury would have inevitably rested its verdict on guardrails or guidelines that it had no knowledge of. The government cannot excuse the error hear by conjuring an Instruction 15 that might have been.

This prosecution was a prolonged attempt to smash a state regulatory peg into a federal kidnapping hole. The result was a trial that turned entirely on an element that parties to normal kidnapping cases rarely have reason to meaningfully address. Instruction 16 relieved the government of its burden of proving that dispositive element to the jury's satisfaction. That constitutional violation was not harmless. [51]

---

[51] Mr. Lozier advocated for a different, foreclosed harmless error standard in his opening brief. *See* App. Br., at 52-54. He still believes that standard to be the right one, but the government's response causes no occasion to elaborate on it. Further, the error here was harmful under the ordinary standard for the reasons above and in the opening brief.

Appellate Case: 24-1200    Page: 25    Date Filed: 07/22/2024 Entry ID: 5415998

## Conclusion

The Court should vacate Mr. Lozier's convictions and remand for a new trial.

Respectfully submitted,

/s/ Tyler K. Morgan
Tyler K. Morgan
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
314-241-1244
Tyler_Morgan@fd.org

21

**Service Certificate**

I hereby certify that on July 22, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ Tyler K. Morgan

**Compliance Certificate**

Pursuant to Fed. R. App. P. 32(a)(7)(B), the undersigned hereby certifies that this brief complies with the type-volume limitation. The number of words contained in this brief, typed in 14-point font in Microsoft Word for Microsoft 365, is 5,001.

In accordance with 8th Cir. R. 28A(h)(2), the brief has been scanned for viruses and is virus free.

/s/ Tyler K. Morgan

Appellate Case: 24-1200    Page: 27    Date Filed: 07/22/2024 Entry ID: 5415998